JULIA L. FRIEDE and Another, as Executors under the Last Will and Testament of M. SERGEY FRIEDE, Deceased, and CHARLES W. CULKIN, as Sheriff of the County of New York, Respondents, Appellants, *v.* THE NATIONAL CITY BANK OF NEW YORK, Appellant, Respondent.

First Department, March 2, 1928.

Attachment — action in aid of attachment — action was commenced against Russian bank and alleged deposit in defendant was attached — said deposit was placed with defendant to be transmitted to Russian bank — before defendant transmitted deposit Russian bank was seized by Soviet government — deposit never became property of Russian bank — counterclaim based on securities of defendant in Russian bank at time of seizure cannot be sustained — plaintiffs have no right against money on deposit.

The plaintiffs brought an action against a Russian bank and attached certain money in the defendant bank as the property of the Russian bank. This action is in aid of attachment. The money held by the defendant was deposited with it by a third person for transmission to the Russian bank for the account of such third person. Before the money could be transmitted the Russian bank was seized by the so-called Soviet government of Russia and the bank was dissolved and the transaction never completed. Thereafter the

Russian bank cabled the defendant that it considered the transaction canceled. The defendant was then required by judgment to repay the money to the third party who made the deposit with it.

Defendant sets up as a counterclaim that its Russian branch deposited certain securities with the Russian bank and that those securities were lost when the Russian bank was seized by the Soviet government. Defendant's counter-claim was properly dismissed for though the defendant may have been relieved from making demand for the return of the securities on the ground that such demand would have been futile after the Russian bank had been seized by the Soviet government, still the same excuse could have been pleaded by the Russian bank for failure to deliver. The measure of liability of the Russian bank was that of bailee and if the securities were taken from it by superior force it would have had a good defense.

The plaintiffs are not entitled to the money on deposit in the defendant bank for that money never became the property of the Russian bank, the debtor of the plaintiffs. The transaction having been prevented by the seizure of the Russian bank by the Soviet government the title did not pass to it but still remained in the third person who deposited the money with the defendant for transmission, and he had the right to rescind the contract and demand the money.

CROSS-APPEALS by the plaintiffs and by the defendant from an amended judgment of the Supreme Court entered in the office of the clerk of the county of New York on the 30th day of December, 1926, and also from parts of an order entered in said clerk's office on the 28th day of January, 1927.

*Samson Selig* of counsel [*Joseph Force Crater* with him on the brief; *Guggenheimer, Untermyer & Marshall*, attorneys], for the plaintiffs.

*Carl A. Mead* of counsel [*William Harvey Reeves* and *W. Deering Howe* with him on the brief; *Shearman & Sterling*, attorneys], for the defendant.

*Joseph M. Hartfield* of counsel [*Vermont Hatch* and *Jeremiah M. Evarts* with him on the brief; *White & Case*, attorneys], for Hirsch Cahn and Jacob Cahn, as *amici curiæ*.

FINCH, J. This action was brought in aid of an attachment against the defendant bank. The controversy arises between the attaching creditor and the defendant bank with reference to a deposit made with it as correspondent of a Russian bank, against which deposit the defendant bank claims a lien on its own account and because a claim had been made against it by the depositor. The court at Trial Term, a jury having been waived, found for the attaching creditor and against the claim of the bank and the depositor. The judgment must be reversed for the reason that neither the defendant bank nor the attaching creditor can sustain a claim against a deposit which the depositor may recover because the bank for whose account the correspondent received the moneys suspended business before the credit reached it. The set-off

claimed by the defendant bank is also invalid because it is based upon the failure of the Russian bank to return property which it had as bailee and lost because of *force majeure* applied by the Soviet government.

Defendant appeals from said judgment in favor of plaintiffs which awarded to the sheriff the sum of $90,305.30 and also certain securities. The attachment was issued in an action brought by the plaintiffs against a Russian bank and a levy was made upon property of said bank in the hands of the defendant, the latter being a correspondent of the Russian bank. The property levied on consisted of certain securities and of a sum of money which had been collected by the defendant from a third party at the request of H. & J. Cahn, for transmission by the defendant to the Russian bank for the account of H. & J. Cahn. Said amount the defendant credited upon its books to the account of the Russian bank. After such credit, but before the Russian bank had been advised thereof, the latter bank was seized by the Soviet government under its policy of nationalization or liquidation of all such institutions. The credit never was accepted by the Russian bank or entered upon its books. Subsequently H. & J. Cahn requested the defendant to cancel the credit to the Russian bank for their account and to return the money to the party from whom it was collected. Accordingly the defendant cabled the Russian bank for authority to debit its account, and in response received a cable to the effect that the transaction was considered canceled. Upon receipt of this cable the defendant did not make the repayment as requested by H. & J. Cahn. The account of the Russian bank at that time had been overdrawn by approximately $20,000, and the defendant accordingly credited itself with that amount, leaving approximately $63,000 out of the sum received. The defendant claimed that it did not then know of the events in Petrograd and did not know that the credit had not been entered in the books of the Russian bank. On October 21, 1919, there was served on the defendant the aforesaid warrant of attachment in an action brought by these plaintiffs against the Russian bank to recover approximately $700,000. On October 27, 1919, the defendant made a return to the sheriff, stating it was holding, subject to its own claim against the Russian bank, certain securities and $71,156.92, " balance of their account with us."

On July 9, 1920, Messrs. Cahn Brothers brought an action against the defendant to recover the sum of approximately $83,000, the amount deposited with the defendant for transmission to the Russian bank, as aforesaid, with interest. In said action a judgment was entered in favor of Cahn Brothers against the defendant

for approximately $99,000. An appeal was taken by the defendant, but withdrawn, and the credit balance of the Russian bank was paid over to Messrs. Cahn against a bond of indemnity. On May 5, 1921, the defendant amended its return to the sheriff so as to state that the defendant did not hold under the warrant of attachment for the account of the Russian bank the sum of $71,156.92, " since we now have evidence showing that neither the said amount nor any part thereof was due and owing to the said bank at the time the attachment was levied."

The final answer in the case at bar, in addition to denying the material allegations of the complaint, sets up as affirmative defenses, among other things, a right of setoff in the defendant against the Russian bank exceeding the amount of the defendant's indebtedness to the Russian bank; the aforesaid judgment recovered by Messrs. Cahn for the aforesaid cash deposit, and satisfaction of that judgment by payment; that said cash deposit was not the property of the Russian bank, as was erroneously stated in the defendant's original return on the attachment, but was the property of the Cahns; payment to the Russian bank; there was also set up a counterclaim in the nature of a recoupment against the Russian bank, based on the following facts: In October, 1917, one Jacobson, a depositor in the Petrograd branch of the defendant, borrowed from that branch approximately 2,000,000 roubles, with which he purchased certain shares of stock of a Russian corporation. Jacobson pledged this stock with the Petrograd branch of the defendant bank as security for the loan. This stock the Petrograd branch of the defendant deposited with the Russian bank for safe-keeping, and it never has been returned to the defendant. The manager of the defendant's Petrograd branch who conducted this transaction was ill at the time of the trial and no demand on behalf of the defendant for the delivery of this stock has been shown. As noted, all the assets of the Russian bank were taken over by the Soviet government on December 27, 1917, before the bank opened for the day and the Russian bank ceased to do business on that date. The value of the 2,000,000 roubles, which was the interest of the defendant, as pledgee, in the aforesaid corporate stock, was approximately $300,000, which far exceeds the present value of the property attached.

As already noted, the action was tried before the court, a jury having been waived. The court rendered judgment for the plaintiff for the securities and cash deposit, as aforesaid, and dismissed the defendant's counterclaim upon the ground that there was no proof of a demand for the return of the securities deposited with the Russian bank as bailee, or of the futility of such a demand;

and that any claim by the defendant that the making of a demand was excused by the fact of the taking by *force majeure,* would also constitute an excuse for the failure of the Russian bank to return the securities.

Taking up first the setoff and counterclaim of the defendant, the learned court was clearly right in holding that the same *force majeure* which would have rendered futile a demand by the defendant for the return of the securities also excused the Russian bank for not returning the same. The measure of liability of the Russian bank was that of a bailee and fulfilled by using due care. No lack of due care is shown when overwhelming force concededly was present. The set-off and counterclaim of the defendant, therefore, fail.

Taking up now the money judgment which the plaintiffs have obtained, this judgment cannot stand. The plaintiffs, attaching creditors, have no better right to the money than had the Russian bank. It is well settled that an attachment can only be levied against property belonging to the attachment debtor. (*Lamont* v. *Cheshire,* 65 N. Y. 30, 43; *Williams* v. *Ingersoll,* 89 id. 508, 525; *McAllaster* v. *Bailey,* 127 id. 583, 586; *Courtney* v. *Eighth Ward Bank,* 154 id. 688, 691; 6 C. J. 36, 192, 193.) Because of the seizure of the Russian bank by the Soviet soldiers on the morning of December 27, 1917, and the suspension of its banking business from that time and thereafter, the deposit which was made in the defendant bank for the account of Messrs. Cahn remained their deposit free from any claim of the Russian bank. The rule is well settled that where a bank has suspended before commercial paper deposited for collection has been collected and the money becomes commingled with the assets of the suspended bank, the depositor may recover the money so retained. " The rule seems to be well settled, that after a bank has suspended, it ought not to receive payments upon business paper previously deposited with it for collection, in such a manner that the money so received by it will pass into its general assets, and the owner of the paper be placed in the position of one of its creditors, entitled only to take his dividends; and proceeds received after the bank becomes insolvent, will be held in trust, and may be recovered in full." (1 Michie Banks & Banking, 499; Morse Banks & Banking [5th ed.], § 248-a.)

As already noted, the Russian bank never made any entries in its books showing acceptance of this deposit. Consequently, the rule applies that under such circumstances the depositor has not lost his rights to his deposit. The same rule applies here as is applied in the ordinary case of suspension of business due to insolvency. The reason for the application of the same rule

to the case at bar is that if the bank had accepted the credit after it knew it was insolvent or after it had been seized by the Soviet government, it would have been wholly unable to pay the money over to the Cahns as directed and, consequently, it would have breached the contract which the depositor was making with it before it received the depositor's money. The depositor, therefore, has a right to rescind the contract and reclaim his property. Such a result is arrived at without in any way infringing upon the general doctrine, that upon a deposit being made by a customer in a bank in the ordinary course of business, the money, or drafts, or checks received and credited as money, become immediately vested in and the property of the bank and the relationship of debtor and creditor arises between the bank and its depositor. (*Cragie* v. *Hadley*, 99 N. Y. 131, 133.) So, too, it is not necessary, in order to reach the result in the case at bar, to hold that the deposit received for the account of Messrs. Cahn was in any sense a special deposit. (*Cutler* v. *American Exchange National Bank*, 113 N. Y. 593.) It is said in *Drovers' National Bank* v. *O'Hare* (119 Ill. 646, 653) that common honesty dictates that a bank should refuse to accept money under such conditions. It has even been held that where a bank, known by its officers to be insolvent, collected money for a customer and mingled the same with its own funds so that an amount larger than the sum received passed to the bank's receiver in insolvency, even though the customer was unable to trace the identical money into the receiver's hands, nevertheless he was entitled to recover from the receiver an amount equal to that collected. (*Butler* v. *Western German Bank*, 159 Fed. 116.)

This result is reached even though the manager of the Russian bank had no power to send the cable releasing the interest of the Russian bank in the funds.

It follows that the judgment appealed from should be modified so as to render judgment for the defendant on that portion of the plaintiffs' claim which demands the cash balance in the current account reported in the defendant's original return and interest thereon. The said judgment as so modified should be affirmed, without costs.

DOWLING, P. J., MERRELL and McAVOY, JJ., concur.

Judgment modified as directed in opinion, and as so modified affirmed, without costs. Settle order on notice.