**KAVANAUGH v. FASH, School District Treasurer.**

**SAME v. WALKER, County Treasurer.**

**SAME v. HESS, City Treasurer.**

**SAME v. WEEMS, State Treasurer.**

Nos. 1050–1053.

Circuit Court of Appeals, Tenth Circuit.
Dec. 26, 1934.

C. H. Mauntel, of Alva, Okl. (F. B. H. Spellman and J. B. Doolin, both of Alva, Okl., on the brief), for appellant.

Arthur Leach, of Oklahoma City, Okl. (W. L. Houts, of Alva, Okl., and M. M. Thomas, of Oklahoma City, Okl., on the brief), for appellee Fash.

Arthur Leach, of Oklahoma City, Okl., and E. W. Snoddy, of Alva, Okl. (H. C. Crandall and W. L. Houts, both of Alva, Okl., and M. M. Thomas, of Oklahoma City, Okl., on the brief), for appellee Walker.

Arthur Leach, of Oklahoma City, Okl., and J. J. Glaser, of Alva, Okl. (F. A. Rittenhouse and John F. Webster, both of Oklahoma City, Okl., and R. M. Chase, of Alva, Okl., on the brief), for appellee Hess.

Randell S. Cobb, Asst. Atty. Gen. (J. Berry King, Atty. Gen., on the brief), for appellee Weems.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The decisive question common to these cases is whether a national bank in the state of Oklahoma may pledge its assets to secure deposits of public money without a resolution of its board of directors unanimously adopted and recorded in its minutes.

The First National Bank in Alva was the duly designated depositary of the state of Oklahoma, Woods county, the city of Alva, and school district No. 1 in that city. Acting through its president, but without a resolution of its board of directors, the bank delivered to the respective treasurers of the sovereigns named certain municipal bonds, highway warrants, school warrants, and other securities, to secure deposits of public moneys. The bank was declared insolvent and suspended business on March 14, 1932. The then balances of public funds thus deposited were: State, $26,477.40; county, $47,135.52; city, $71,954.14; school, $6,258.61.

The receiver instituted a separate suit in equity against each treasurer to cancel the pledge and recover the securities, and to enjoin their disposition pending the suit, contending that their hypothecation was void because the board of directors of the bank failed to authorize such action by a resolution unanimously adopted and placed of record. The treasurer in each case answered pleading specifically that the president of the bank made the pledge with the knowledge and consent of the board of directors and of all stockholders; that it was valid; that demand had been made for payment of the money on deposit at the time the bank suspended business and that payment had been refused. Treating the answer in each case as a motion to dismiss the bill for want of equity, the court sustained the motion and dismissed the suit. The cases are here on appeal to review that action.

That the statutes of Oklahoma authorize the designation of banks as depositaries for state, county, city, and school funds; that depositaries thus selected may give security for such deposits; that the securities pledged in these cases were of the kind a state bank may pledge to secure such deposits; and that the money was deposited without knowledge that the bank was insolvent, are conceded matters. We, therefore, may proceed straightway to consider whether a resolution of the board of directors, unanimously adopted and recorded in the minutes, was essential to the validity of the pledge.

The act approved June 25, 1930, amended section 45 of the National Bank Act of 1864 (13 Stat. 113) by adding thereto the following: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State." 46 Stat. 809, 12 USCA § 90. Before that addition was made a national bank had neither express nor implied authority to pledge its assets to secure deposits of public money of a state or any political subdivision thereof. Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777; Marion v. Sneeden, 291 U. S. 262, 54 S. Ct. 421, 78 L. Ed. 787. The power thus conferred is confined to national banks in states where state banks are authorized to make pledges of that kind, the manifest purpose being to place national banks on a parity with state banks in respect to competing for deposits of public money. The act confers the substantive power to pledge assets as security for the safekeeping of public money deposited by a state or any of its political subdivisions. It attaches one limitation to that power. It is that the security given shall be of the same kind as that other banking institutions in the state may give. The statute is not procedural in nature and does not provide the manner in which the indemnity shall be effected. Fidelity & Deposit Co. v. Kokrda (C. C. A.) 66 F.(2d) 641.

It has been the general law in Oklahoma since the legislative session of 1907-1908 that a bank could not prefer one depositor or creditor over others by a pledge of its assets as collateral security. The statute was carried forward as section 4144, C. O. S. 1921. It remained in that condition until 1925, but during that period the several acts authorizing the state, counties, cities, and school districts to take pledged assets of designated depositaries, constituted an implied grant to banks to make pledges of that kind, and being special statutes, they modified the general law to that extent. It was so held in Maryland Casualty Co. v. Board of Com'rs, 128 Okl. 58, 260 P. 1112, and that case was cited with approval in Texas & Pacific Ry. Co. v. Pottorff, supra. The general statute was amended in 1925 (section 1, c. 99, Sess. Laws 1925) by inserting a proviso that a bank could, by a unanimously adopted resolution of its board of directors duly entered in its minutes, pledge its assets to secure deposits

of township, city, school district, and benevolent or fraternal association funds. That amendment did not include state or county funds. Mays v. Board of Com'rs, 164 Okl. 231, 23 P.(2d) 664; Weems v. Town of Covington, 167 Okl. 443, 30 P.(2d) 462. But it was broadened in 1931 (section 1, c. 40, Sess. Laws 1931) to include state and county deposits, also others not involved here. The original statute, with the enlarged amendment enacted in that manner, now a part of section 9115, O. S. 1931, is in the following language: "No bank, banker or bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or by selling or transferring any of the assets of any insolvent bank in consideration of any deposit in such bank; provided, any bank, by the unanimous consent of its board of directors, expressed by resolution duly entered in the minute book of such bank, may pledge the assets of such bank, except promissory notes, as security for postal savings funds, government funds, Indian funds under the control of the Federal Government, state funds of the State of Oklahoma, county, township, city, town, school district, benevolent or fraternal association funds deposited in such bank in all cases where no surety bond is given to secure such deposits. * * * "

█▌ It is argued that since a state bank in Oklahoma may pledge its assets as such security only through a resolution of its board of directors duly entered in the minute book, a national bank in that state cannot do so otherwise. The statute provides (1) that generally a bank may not prefer one depositor or creditor by a pledge of assets; (2) that it may make such a pledge to secure deposits of public funds; and (3) that in doing so the action shall be authorized by a resolution of the board of directors unanimously adopted and placed of record in the minute book. It is not provided that a pledge made otherwise than in the specified manner shall be void, nor is there anything in the act to indicate a legislative intent to invalidate a pledge made for the authorized purpose without compliance with its provisions. A statute is mandatory if it is the essence of the thing required; otherwise, it usually is directory. The essence of a pledge of the kind in question, ordinarily made by a directing officer of the bank, is the setting apart and delivery of the assets with an agreement that they shall constitute security for the money deposited. The resolution is preliminary and procedural thereto. Diligent search indicates that the Supreme Court of Oklahoma has not considered this exact question, but the views expressed seem to find support by way of analogy in Mays v. Board of County Commissioners, supra. It was there held that the provision contained in section 5727, C. O. S. 1921, now section 7428, O. S. 1931, requiring that securities tendered as a pledge to secure county deposits be submitted to the county judge and county attorney and be by them approved, is directory and that failure to comply with it does not invalidate the transaction. In like manner we think the provision relating to the resolution of the board of directors is modal and that failure to follow its terms does not render ineffective a pledge made and acted upon in good faith. See Haynes v. City of Woodward (D. C.) 6 F. Supp. 270.

The next contention advanced is that return of the securities may be had without first restoring the funds deposited on the strength of them. That contention rests upon the postulate that the pledge was void. Having determined otherwise, it is unnecessary to discuss the question.

█ Finally, it is said in cause No. 1053 that a bond of $10,000 issued by the city of Tonkawa was pledged to the State Treasurer in February, 1927, at a time when a national bank lacked authority to make such a pledge. The bill merely alleges that the securities were pledged before the bank failed in 1932. There is no allegation that the pledge preceded passage of the enabling act. The answer alleges that the particular bond was pledged in the first instance during 1927, but was repledged in July, 1931. Since the court, with the approval of all parties, treated the answer as a motion to dismiss for want of equity, we are limited to the allegations contained in the bill. Manifestly, they do not support the argument that the pledge was made before June 25, 1930. It may have been made intermediate that date and the suspension of business by the bank. Furthermore, the enabling act vitalized a previously made pledge with respect to money deposited after it became effective. Lewis v. Fidelity Co., 292 U. S. 559, 54 S. Ct. 848, 78 L. Ed. 1425, 92 A. L. R. 794. The result is the same if we transcend recognized procedure and look to the admission contained in the answer because it is expressly alleged in connection therewith that the bond was pledged anew in 1931.

The decrees are severally affirmed.